**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---

KRISTIN NORTON and ROCK WILLIAMS,

      Plaintiffs,

      v.

MATTHEW B. GALLIGAN, TOWN OF
SOUTH WINDSOR, THOMAS DELNICKI,
MICHELE R. LIPE, ZONING
ENFORCEMENT OFFICER PAMELA
OLIVA, KEITH YAGALOFF, DR. M. SAUD
ANWAR, BILLY MITCHELL,
ENVIRONMENTAL SERVICES, INC., and
JOHN DOES 1-10,

      Defendants.

No. 3:17-cv-395 (VAB)

---

## RULING ON DEFENDANTS' MOTIONS TO DISMISS

Kristin Norton and Rock Williams ("Ms. Norton and Mr. Williams" or "Plaintiffs") have

sued Matthew Galligan, the Town of South Windsor, Thomas Delnicki, Michele Lipe, Pamela

Oliva, Keith Yagaloff, Dr. M. Saud Anwar ("Town Defendants"), and Billy Mitchell,

Environmental Services, Inc., and John Does 1-10 ("ESI Defendants"), alleging civil rights

violations under Section 1983, the Connecticut Constitution, and the common law. Plaintiffs

claim that Defendants trespassed onto Plaintiffs' property, removed their personal property

without permission or due process of law, and defamed Plaintiffs at a town meeting.

Defendants have filed two motions to dismiss. The first, filed by the Town Defendants,

Town of South Windsor, Matthew Galligan, Thomas Delnicki, Michele Lipe, Pamela Oliva,

Keith Yagaloff, and Dr. Anwar, seeks to dismiss Counts One, Two, Three, and Five under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The second, filed by the ESI Defendants, Environmental Services, Inc., and Billy Mitchell, seeks to dismiss Counts Two, Three, and Five under Rules 12(b)(1) and 12(b)(6).

For the following reasons, Defendants' motions to dismiss are **GRANTED IN PART** and **DENIED IN PART**.

The Town Defendants' motion to dismiss Count One is **DENIED** as to Defendant Galligan, and **GRANTED** as to Defendants Lipe, Anwar, Delnicki, Oliva, and Yagaloff. Plaintiffs may serve an Amended Complaint within twenty-one days of this Order, if they wish to address the dismissed claims against these Defendants.

Defendants' motion to dismiss Count Two is **GRANTED** for lack of subject-matter jurisdiction under Rule 12(b)(1). Defendants' motion to dismiss Count Three is **GRANTED** for lack of subject matter jurisdiction under Rule 12(b)(1). Defendants' motion to dismiss Count Five is **GRANTED**, as Plaintiffs do not oppose the motion to dismiss.

Because Counts Two, Three and Five are dismissed, the ESI Defendants' motion to dismiss is **GRANTED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Allegations

Ms. Norton owns a single-family house in South Windsor, where she lives with her twenty-four year old son, as well as her boyfriend and business partner, Mr. Williams. Compl. ¶ 17, ECF No. 1. For work, Ms. Norton cleans out foreclosed homes and either collects abandoned items or buys them at flea markets, yard sales, and antiques shops. *Id.* Ms. Norton organizes and

stores the items in her backyard, and then sells them at flea markets, tag sales, and auctions. *Id.*
Mr. Williams helps Ms. Norton clean homes and collect items. *Id.* ¶ 18.

In 2014, Ms. Norton allegedly received a notice from South Windsor claiming that her property was blighted and that the Town intended to place a lien on the property. *Id.* ¶ 19. Ms. Norton allegedly called Ms. Oliva, the Zoning Enforcement Agent of the Town, and asked how she could fix the problem. *Id.* Ms. Oliva allegedly responded that Ms. Norton needed to install a fence or put her personal property in a garage. *Id.* Ms. Norton allegedly installed, "at considerable cost and expense," a six-foot fence that surrounded the backyard. *Id.*

Ms. Norton allegedly did not hear from Defendants again until 2015, when Mr. Yagaloff, the town attorney, called her to tell her that the camper was still visible over the top of the fence, and, because of a gap in the fence, the personal property in the backyard was also still visible. *Id.* ¶ 20. Mr. Yagaloff allegedly did not mention a blight lien. *Id.* Plaintiffs allegedly repaired the gap in the fence, but Mr. Yagaloff called several more times to say that the camper was still visible. *Id.* Ms. Norton allegedly went to South Windsor's Planning & Zoning office, where she asked Ms. Oliva and Ms. Lipe how she could remediate the alleged blight. *Id.* Ms. Norton claims that "Defendant Lipe rudely snapped at [her], telling her to clean up the Property," and "Defendant Oliva claimed there was still blight and that Plaintiff Norton needed to remove the camper." *Id.* Shortly after that conversation, Ms. Norton allegedly removed the camper, and believed she had solved the problem. *Id.*

On January 4, 2016, the Town Council allegedly held a meeting "where members of both the Town Council and participants voiced their opinions about the Property, calling it 'pathetic', 'an untenable situation', 'the worst of the worst'." *Id.* ¶ 21. Mr. Yagaloff allegedly said that Plaintiffs were "the 2% of folks that don't care about their community or themselves." *Id.*

On January 19, 2016, the South Windsor Town Council held another public hearing and approved a revised blight ordinance. *Id.* ¶ 22. Plaintiffs allege that "Defendants Delnicki and Anwar of the Town Council demand[ed] immediate action in regard to Plaintiff's property." *Id.*

Plaintiffs allege that "[o]n April 19, 2016, with absolutely no prior notice, Defendants Galligan and Mitchell suddenly appeared at the Plaintiff's Property, trespassed upon the Plaintiff's property and began to peer over the top of the stockade fence whereupon Plaintiff Rock [Williams], now alerted to their presence, asked them to leave." *Id.* ¶ 23. Mr. Galligan and Mr. Mitchell allegedly ignored Mr. Williams and told him that they would return the next day to remove the personal property. *Id.*

In response, Ms. Norton went to the Town Hall to speak to Mr. Galligan. Plaintiffs allege that "[h]e began rudely and loudly yelling at her thereby causing Plaintiff Norton fear and trepidation and she left in frustration without any explanation as to the Town's specific concerns or proposed actions." *Id.* Ms. Norton allegedly also called Mr. Yagaloff, who "assured her that Defendant Galligan was not seizing everything, only hazardous materials that Galligan deemed a danger to the health, safety and welfare of the public." *Id.*

On April 20, 2016, Plaintiffs allege that Defendants and John Does acting under their control, with no notice, warrant, court order, or administrative procedure, and no "probable cause to suspect that a crime had taken place, or reasonable suspicion that a crime might take place, and with no identifiable threat to the health, safety or welfare of the public, appeared unannounced en masse at the Property." *Id.* ¶ 24. Plaintiffs allege that Defendants broke through their fence and told Plaintiffs that "if they interfered with the seizure and removal of any of the Personal Property, they would be placed under arrest." *Id.*

Plaintiffs allege that "Defendant ESI, with Defendants Mitchell and Galligan supervising John Does 1 through 10, removed Plaintiffs' Personal Property, including inventory, antiques and collectibles, filling approximately 10 – 12 large roll off dumpsters[.]" *Id.* Plaintiffs also allege that some John Does took the personal property into their own cars "for their own use and conversion." *Id.* Mr. Galligan and Mr. Mitchell allegedly refused to tell Plaintiff where or whether the property would be stored, and Mr. Yagaloff allegedly explained to Ms. Norton that the property was being removed to prevent the spread of the Zika virus. *Id.* The personal property allegedly consisted of "valuable framed antique photographs, antique books and furniture, works of art, tools, farm and garden equipment, lawn furniture, household furnishings, working appliances and Plaintiff Williams'[s] tools of trade and valuable scrap metal," totaling over $100,000. *Id.*

Ms. Norton claims that, as a result of the seizure of her property, she could no longer make a living and was forced to file for Chapter 7 bankruptcy. *Id.* ¶ 25. She then discovered that a blight lien was recorded against the Property. *Id.* Plaintiffs claim that "Defendants caused damage to Plaintiffs by, *inter alia*, trespassing upon her home and property, violating their civil rights, seizing without cause and just compensation the Personal Property, and harming their ability to make a living so as to provide life's basic necessities such as food, clothing, shelter, etc." *Id.* ¶ 26. Plaintiffs also allege that they "suffered embarrassment and ridicule which was embarrassing, demeaning, threatening and demoralizing to Plaintiffs" and that Defendants caused Plaintiffs "mental anguish, fear and trepidation[.]" *Id.*

## B. Procedural History

Plaintiffs filed this Complaint on March 8, 2017, alleging a variety of claims. First, Plaintiffs allege that all Defendants violated Plaintiffs' right to be secure from unreasonable

searches and seizures under the Fourth Amendment, 42 U.S.C. § 1983, and Article I, Section 7 of the Connecticut Constitution. *Id.* at 10. Second, they allege that all Defendants violated Plaintiffs' right to due process of law under the Fifth and Fourteen Amendments, 42 U.S.C. § 1983, and Article I, Section 8 of the Connecticut Constitution. *Id.* at 10-11. Third, Plaintiffs allege that all Defendants violated Plaintiffs' right to just compensation under the Fifth and Fourteenth Amendments, 42 U.S.C. § 1983, and Article I, Section 11 of the Connecticut Constitution. *Id.* at 11. Fourth, Plaintiffs allege that Mr. Yagaloff made a slanderous statement about Plaintiffs. *Id.* at 12. Fifth, Plaintiffs allege that all Defendants intentionally trespassed on Plaintiffs' property. *Id.* at 12-13.

On May 30, 3017, the Town of South Windsor, Matthew Galligan, Thomas Delnicki, Michele Lipe, Pamela Oliva, Keith Yagaloff, and Dr. M. Saud Anwar filed a motion to dismiss. First Mot. Dismiss, ECF No. 26. They moved to dismiss Counts One, Two, Three, and Five as to Defendants Lipe, Anwar, Delnicki, Yagaloff, Oliva, and Galligan under Rule 12(b)(6), asserting that Plaintiffs failed to state a claim upon which relief can be granted because Plaintiffs did not demonstrate that those Defendants were personally involve in the alleged conduct. *Id.* at 4, 9. They also moved to dismiss Count Three for lacking subject-matter jurisdiction under Rule 12(b)(1), asserting that Plaintiffs' claim that they were deprived of just compensation was not ripe for adjudication. *Id.* at 10. These Defendants also argued that, to the extent that Count Two brings a substantive due process claim, it must be dismissed because there are specific sources of constitutional protection for the claims that Plaintiffs have made. *Id.* at 13. Finally, they claim that Count Five must be dismissed under Rule 12(b)(6) for failing to state a claim upon which relief can be granted because "trespass to land is an intentional tort for which a municipality and its employees cannot be held liable." *Id.* at 15.

On July 24, 2017, Environmental Services, Inc. ("ESI") and Billy Mitchell also filed a motion to dismiss. Second Mot. Dismiss, ECF No. 34. These Defendants asserted that Counts Two, Three, and Five should be dismissed as to the ESI Defendants. Memo. of Law, ECF No. 35. As to Count Two, these Defendants, as in the First Motion to Dismiss, argue that, "[t]o the extent that the plaintiffs allege a substantive due process violation, that claim should be dismissed because there is an explicit source of constitutional protection in the Fourth and Fifth Amendments." *Id.* at 4. As to Count Three, these Defendants assert that the claim for just compensation is not ripe for adjudication. *Id.* at 6. As to Count Five, Defendants argue that ESI and Mr. Mitchell are agents of the Town, and trespass is an intentional tort for which governmental immunity applies. *Id.* at 9.

## II.     STANDARD OF REVIEW

Defendants have moved to dismiss the Complaint for lack of subject-matter jurisdiction and for failing to state a claim upon which relief can be granted.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing by a preponderance of the evidence that the Court has subject matter jurisdiction over the claims. *Id.* In evaluating whether the plaintiff has established that the Court has subject matter jurisdiction, "the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

Under Rule 12(b)(6), the Court will grant a motion to dismiss only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); Fed. R. Civ. P. 12(b)(6); *see also Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005) ("*All* complaints must be read liberally; dismissal on the pleadings *never* is warranted unless the plaintiff's allegations are doomed to fail under any available legal theory."); Fed. R. Civ. P. 8(a) (Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). Allegations need not be detailed, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

At this stage, the Court views the facts alleged in the Complaint in the light most favorable to the plaintiff and draws all reasonable inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 358 (2d Cir. 2013); *see also Twombly*, 550 U.S. at 555 ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'." (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))). The court will take "all of the factual allegations in the complaint as true," but will not accept legal conclusions pleaded as factual allegations. *Iqbal*, 556 U.S. at 678.

## III.   DISCUSSION

Two motions to dismiss have been filed in this case. First, Defendants Anwar, Delnicki, Galligan, Lipe, Oliva, Yagaloff, and the Town of South Windsor ("Town Defendants") moved to

dismiss Counts One, Two, Three, and Five, as to different Defendants, as discussed below. ECF No. 26. Second, Defendants Environmnetal Services, Inc., and Billy Mitchell (together, "ESI Defendants"), moved to dismiss Counts Two, Three, and Five as to the ESI Defendants. ECF No. 34.

### A. Motion to Dismiss Filed by Dr. Anwar, Mr. Delnicki, Mr. Galligan, Ms. Lipe, Ms. Oliva, Mr. Yagaloff, and the Town of South Windsor.

#### 1. Motion to Dismiss Count Five

As an initial matter, in their combined objection and memorandum in opposition to the second motion to dismiss, Plaintiffs "acknowledge the current state of the law with respect to governmental immunity and consent to a dismissal of their trespass claims." Obj. & Opp. at 10, ECF No. 37. Therefore, Defendants' motion to dismiss Count Five is granted.

#### 2. Motion to Dismiss Count Three for Lack of Subject-Matter Jurisdiction

Defendants move to dismiss Count Three both for failure to state a claim upon which relief can be granted under Rule 12(b)(6), and for lack of subject matter jurisdiction under Rule 12(b)(1). First Mot. Dismiss at 8, 10; Second Mot. Dismiss at 6. The Court will consider Defendants' jurisdictional argument first, because "[d]etermining the existence of subject matter jurisdiction is a threshold inquiry[.]" *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). In addition, the Court considers Defendants' motion to dismiss Count Three before their motion to dismiss Count Two, because the Court's analysis of ripeness related to just compensation will inform its analysis of ripeness related to due process.

Defendants argue that the Court lacks subject-matter jurisdiction over Count Three because it is not yet ripe for adjudication. Mot. Dismiss at 10. "Ripeness is a justiciability

doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hospitality Assoc. v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967)). "Ripeness encompasses two overlapping doctrines concerning the exercise of federal court jurisdiction." *Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 733 F.3d 393, 429 (2d Cir. 2014) (citing *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). The first involves Article III limitations on the Court's power to hear a case. *Id*. The second is "a more flexible doctrine of judicial prudence," which gives the court some discretion over whether to exercise jurisdiction. *Id.* (quoting *Reno*, 509 U.S. at 57 n.18).

In *Entergy Nuclear Vermont Yankee*, the Second Circuit considered whether a Vermont regulation favored Vermont retail utilities over out-of-state retail utilities in contravention of the dormant Commerce Clause. 733 F.3d at 428. The Court explained that the issue was not ripe because an underlying power purchase agreement had not been completed, and the parties had not provided "evidence regarding [the proposed power purchase agreement's] effect on out-of-state power consumers." *Id.* at 430. The Court found that, without a factual record establishing the effects of the power purchase agreement, the case "does not present a 'concrete dispute affecting cognizable current concerns of the parties within the meaning of Article III,' and is therefore not 'ripe within the constitutional sense.'" *Id.* at 430-31 (quoting *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 546 (2d Cir. 2007)).

With respect specifically to the just compensation clause, "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government

entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). Also, a plaintiff must show that she sought redress through the appropriate administrative avenues before suing in the district court. *Id.* at 187 (citing *Agins v. Tiburon*, 447 U.S. 255, 260 (1980), *rev'd on other grounds*, *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 540-41 (2005)). In other words, "a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation[.]" *Williamson*, 473 U.S. at 195.

Here, Defendants claim that there is an adequate procedure for obtaining just compensation under the Connecticut Constitution, Article I, Section 11, and Plaintiffs have not alleged that they availed themselves of this procedure. Mot. Dismiss at 12. In *Wellswood Columbia LLC v. Town of Hebron*, the court explained that, under *Williamson*, "if a state provides an adequate procedure for obtaining compensation, 'a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided.'" *Wellswood*, No. 3:10-cv-01467, 2013 WL 356619, at *3 (Jan. 29, 2013)). The court found that Article I, Section 11 of the Connecticut Constitution "provides an adequate for a plaintiff alleging a takings claim to obtain just compensation for a taking." *Wellswood*, 2013 WL 356619, at *3 (citing *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 379-80 (2d Cir. 1995) ("[B]efore a plaintiff may assert a federal takings claim, he must first seek compensation from the state if the state has a 'reasonable, certain and adequate provision for obtaining compensation.'" (quoting *Williamson*, 473 U.S. at 194)); *Santini v. Connecticut Hazardous Waste Mgmt. Serv.*, 342 F.3d 118, 126 (2d Cir. 2003)

("Santini could not have brought a Fifth Amendment takings claim in federal court until *after* he brought a state law inverse condemnation action in state court."), *abrogated on other grounds by San Remo Hotel, L.P. v. City & Cty. of S.F., Cal.*, 545 U.S. 323 (2005); *Melillo v. City of New Haven*, 249 Conn. 138, 154 n.28 (Conn. 1999) (holding that plaintiff must first use "legally sufficient procedure" under Article I, § 11); *Cumberland Farms, Inc. v. Town of Groton*, 262 Conn. 45, 81, 81 n.34 (Conn. 2002) (same)).

Consistent with this case law, Connecticut has provided an adequate procedure for obtaining compensation after an alleged taking, consistent with the second prong of *Williamson*. *See Wellswood*, 2013 WL 356619, at *3. In their Complaint, Plaintiffs do not allege facts that establish that they have unsuccessfully sought compensation through Connecticut's Article I, Section 11 procedure; the Complaint does not allege such facts, and Count Three is therefore dismissed under Rule 12(b)(1).

Defendants also move to dismiss Count Three under Rule 12(b)(6), arguing that Plaintiffs have failed to state a claim upon which relief can be granted as to Defendants Lipe, Anwar, Delnicki, Yagaloff, and Oliva because "[t]here is no indication that Defendants Lipe, Anwar, Delnicki, Yagaloff, and Oliva were present at the time of the alleged seizure, or that any of these defendants appropriated the plaintiffs' property for their own use." Mot. Dismiss at 8. Defendants also argue that Plaintiffs have failed to allege that Mr. Galligan was personally involved in seizing Plaintiffs' property without providing just compensation. *Id.* at 10. Because the Court dismissed this Count on subject-matter jurisdiction grounds, this argument is moot.

### 3.    Motion to Dismiss Count Two for Lack of Subject-Matter Jurisdiction

Defendants also argue that Count Two must be dismissed because the Court lacks

subject-matter jurisdiction over the claim, because it is not ripe. Opp. & Obj. at 8. In Count Two,

Plaintiffs allege that:

> Defendants, their employees and agents and/or as agents of the
> Town, owed Plaintiffs a duty under the due process clauses of the
> Fifth and Fourteenth Amendments to the U.S. Constitution and
> Article I, § 8 of the Connecticut Constitution, to provide Plaintiffs
> with a hearing and prior notice thereof before an impartial judicial
> officer or jury of their peers before their ownership interests in the
> Personal Property were stripped from them. This duty includes
> preserving the Personal Property after it had been unlawfully seized
> and removed from the Property.[1]

Compl. ¶ 29. Plaintiffs claim that Defendants failed to provide Plaintiffs with the necessary

notice or due process before or after the property was seized. *Id.* ¶ 30.

Defendants move to dismiss "for the same reasons that their just compensation claim is

not ripe." Opp. & Obj. at 8. Defendants argue that "the plaintiffs' procedural due process claim

in Count Two is based on the same set of facts as their unripe takings claim in Count Three,"

specifically that "the Town passed an anti-blight ordinance and then enforced that ordinance

against the plaintiffs." *Id.* Defendants argue that, under *Kurtz v. Verizon New York, Inc.*, 758

F.3d 506 (2d Cir. 2014), and *Kowalczyk v. Barbarite*, 594 Fed. App'x 690 (2d Cir. 2014),

Plaintiffs' claim is not ripe. The Court agrees.

In *Kurtz*, the Court considered a "procedural due process claim[] arising from a physical

taking." 758 F.3d at 515. In that case, the Second Circuit found that *Williamson*, which requires

that a plaintiff seek available compensation from a state government, as long as there is a

"reasonable certain and adequate provision for obtaining compensation," 473 U.S. at 195, applies

---

[1] In their Combined Opposition and Objection, Plaintiffs clarify that Count Two claims that Plaintiffs' procedural
due process rights, not their substantive due process rights, were violated. Opp. & Obj. at 14.

to procedural due process claims. *Kurtz*, 758 F.3d at 516. The Second Circuit explained that the rule that a plaintiff must take advantage of available state remedies "applies to all procedural due process claims arising from the same circumstances as a taking claim." *Id.* The court continued: "[s]uch a rule finds support in *Williamson County* itself: if the only process guaranteed to one whose property is taken is a post-deprivation remedy, a federal court cannot determine whether the state's process is constitutionally deficient until the owner has pursued the available state remedy." *Id.*; *see also id.* at 515 (rejecting the plaintiffs' argument that the court "has repeatedly not applied [*Williamson County*] [r]ipeness to procedural due process claims involving denial of appropriate notice and hearing in takings-type contexts." (internal quotation marks omitted)).

In *Kowalczyk*, the Second Circuit explained that "[a]fter the Supreme Court decided *Williamson*, the Second Circuit extended the doctrine to certain other constitutional claims, including substantive due process and equal protection challenges related to land-use disputes." 594 Fed. App'x at 692. Furthermore, the court stated, "this Court has made clear that procedural due process claims are unripe if they are based on the same set of facts as unripe substantive due process and takings claims." *Id*. The court affirmed the district court's decision dismissing a procedural due process claim as unripe because "the local land-use governing body had not reached a final determination as to the permitted use of his property[.]" *Id.*

Here, Plaintiffs' procedural due process claim is unripe because Plaintiffs have not yet availed themselves of the remedies provided under Article I, Section 11 of the Connecticut Constitution. Defendants' motion to dismiss Count Two therefore is granted.

**4.    Motion to Dismiss Count One as to Defendants Lipe, Anwar, Delnicki, Yagaloff, Oliva, and Galligan**

The Town Defendants move to dismiss Count One as to Lipe, Anwar, Delnicki, Yagaloff, Oliva, and Galligan. Mot. Dismiss at 4. Count One alleges that the Town Defendants violated Plaintiffs' federal and state rights to be free from unreasonable searches and seizures:

> Defendants, their employees and agents and/or as agents of the Town, violated Plaintiffs' Fourth Amendment rights under the U.S. Constitution and Art. I, Section 7 of the Connecticut Constitution to be free from unreasonable searches of their Property and unreasonable seizures of their Personal Property by confiscating and then dissipating the Personal Property either through its destruction or appropriation by the Defendants . . . without a search warrant, or court order, or probable cause that a crime had taken place, and without any present threat to the health, safety or welfare of the public.

Compl. ¶ 27. The Town Defendants argue that Plaintiffs have failed to establish Defendants Lipe, Anwar, Delnicki, Yagaloff, Oliva, and Galligan were each personally involved in the conduct underlying this claim. *Id.* at 4-5.  The Court agrees with respect to all of the Town Defendants, except Galligan.

"Section 1983 provides a federal remedy for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Golden State Transit Corp. v. City of L.A.*, 493 U.S. 103, 105 (1989) (quoting 42 U.S.C. § 1983); *see also Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (explaining that "[t]he plain words of [Section 1983] impose liability whether in the form of payment of redressive damages or being placed under an injunction only for conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws"). "The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140 (1979) (quoting 42 U.S.C. § 1983). Second, the plaintiff must show that "[t]he conduct

at issue '[was] committed by a person acting under color of state law.'" *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

In addition, the plaintiff must show that the person acting under color of state law was personally involved in the alleged constitutional deprivation. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1987 (1978))); *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation."); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

The plaintiff may establish that the defendant was personally involved in the underlying alleged conduct by showing that the defendant "(i) personally participated in the alleged constitutional violation, (ii) was grossly negligent in supervising subordinates who committed the wrongful acts, or (iii) exhibited deliberate indifference to the rights of the plaintiff by failing to act on information indicating that unconstitutional acts were occurring." *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). "Personal involvement includes direct participation, but only if the defendant was aware or had notice of the facts that rendered the action illegal." *Murvin v. Jennings*, 259 F. Supp. 2d 180, 190 (D. Conn. 2003) (denying summary judgment where there was a factual issue

as to whether the defendant knew exonerating information about a suspect and still aided in his arrest) (citing *City of Newburgh*, 262 F.3d at 155).

As to the first inquiry, Plaintiffs claim that they were deprived of their Fourth Amendment rights to be free from unreasonable searches and seizures. Compl. ¶ 27. Second, Plaintiffs contend that their Fourth Amendment rights were violated by individuals acting as officials of the town. *Id.* Defendants contend, however, that Plaintiffs have not established that those individuals were personally involved in the violation. Mot. Dismiss at 2.

Most directly, Plaintiffs allege that "Defendant ESI, with Defendants Mitchell and Galligan supervising John Does 1 through 10, removed Plaintiffs' Personal Property, including inventory, antiques and collectibles, filling approximately 10 – 12 large roll off dumpsters[.]" Compl. at 7. Plaintiffs also claim that the following facts alleged in the Complaint support their claim that all of the Defendants were involved in violating their rights to be free from unreasonable searches and seizures: the Complaint alleges that attendees at the Town Council meetings, including Mr. Delnicki and Dr. Anwar, negatively commented about Plaintiffs' property and passed an ordinance that targeted the property. Opp. to First Mot. Dismiss at 7, ECF No. 33. Also, Mr. Yagaloff allegedly "'added fuel to the fire' by commenting that Plaintiffs were 'the 2% of folks that don't care about their community or themselves.'" *Id.* at 7-8 (quoting Compl. ¶ 21). Furthermore, Mr. Delnicki and Anwar demanded immediate action after the ordinance was passed, which amounted to an order to Mr. Galligan, which "trickled down to Lipe and Oliva." *Id.* at 8. Plaintiffs claim that all Defendants "worked together and everyone was on the same page with respect to the Plaintiffs and the Property." *Id.*

### a. Mr. Galligan

First, Plaintiffs have sufficiently alleged that Mr. Galligan was directly involved in allegedly unlawfully seizing their property. Defendants argue that Plaintiffs have merely alleged

that Mr. Galligan "was present when the search and seizure occurred, they have not alleged that he was personally involved[,]" and, therefore, Plaintiffs have failed to allege Mr. Galligan's personal involvement in the alleged violation. First Mot. Dismiss at 9. The Court disagrees.

Direct participation is one way to establish personal involvement under Section 1983. *See Johnson v. Glick*, 481 F.2d 1028, 1033-34 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973) (finding prison guard liable for beating inmate). Direct participation is not required, however, to support personal involvement. *See Colon*, 58 F.3d at 873 (explaining that supervisor could be liable for constitutional violation if "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong"); *see also Jackson v. Town of Bloomfield*, No. 3:12-cv-00924 (MPS), 2015 WL 1245850, at *6 (D. Conn. 2015) (finding that supervisor's "liability may arise from their personal involvement as supervisors even if they did not directly commit the torts").

Here, even if Mr. Galligan did not personally take Ms. Norton's belongings, the Complaint alleges that he was at her house, while individuals reporting to him seized her personal property.[2] That is a sufficient allegation that Mr. Galligan was "informed of the violation" and "failed to remedy the wrong." *Colon*, 58 F.3d at 873. Defendants' motion to dismiss Count One as to Mr. Galligan therefore is denied.

### b. Mr. Yagaloff

Plaintiffs also allege that Mr. Yagaloff, as the town attorney, is liable under Section 1983 for allegedly justifying the decision to remove Ms. Norton's property. Plaintiffs allege, for

---

[2] In addition, Defendants correctly assert that Mr. Galligan cannot be held liable for a civil rights violation under Section 1983 based on vicarious liability. The Second Circuit has explained that "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Leonhard v. United States*, 633 F.2d 599, 621 n.30 (2d Cir. 1980), *cert. denied*, 451 U.S. 908 (1981). But Mr. Galligan does not face liability based merely on his position of authority, but rather because, in his position of authority, he oversaw an alleged constitutional violation.

example, that after Ms. Norton discovered "Defendants Galligan and Mitchell . . . trespass[ing] upon the Plaintiff's property and . . . peer[ing] over the top of the stockade fence," she "went directly to the South Windsor Town Hall to speak to Defendant Galligan," and then "called Defendant Yagaloff and questioned why the Town would be removing personal property from her residence when she had installed the fence and engaged the Town officials in working toward an understanding of the Defendants' concerns and remediation requirements, all in an effort to abate the alleged blight." Compl. ¶ 23. Mr. Yagaloff allegedly "assured her that Defendant Galligan was not seizing everything, only hazardous materials that Galligan deemed a danger to the health, safety and welfare of the public." *Id.* In addition, after ESI, Mr. Mitchell, Mr. Galligan, and others allegedly removed Ms. Norton's personal belongings, she allegedly "asked Defendant Yagaloff how the Personal Property put the health, safety and welfare of local residents at risk, [and] he told her it was being removed to prevent the public from contracting the Zika virus." Compl. ¶ 24. Defendant Yagaloff also allegedly "told Plaintiff Norton 'Don't worry, you won't be paying for this, the bank will. In fact, if it will help you out, put more stuff you don't want in the backyard and the bank will pay for its removal.'" *Id.*

Defendants argue that Plaintiffs merely allege that Mr. Yagaloff had conversations with Plaintiffs about their property and the alleged incidents, and that these conversations are not sufficient to establish personal involvement in the alleged constitutional violation. Mot. Dismiss at 7. Defendants argue that Plaintiffs have not alleged that Mr. Yagaloff was present at the time of the alleged seizure or that he took Ms. Norton's belongings. *Id.* at 11.

These allegations against Mr. Yagaloff present a closer question of personal involvement than the allegations against Mr. Galligan. Plaintiffs here do not allege that he personally removed Ms. Norton's belongings, or that he was at her house when the belongings were being removed

by people he supervised. Instead, Plaintiffs allege that Mr. Yagaloff had conversations where he justified or explained the policy, and tried to address Ms. Norton's concerns about it. Compl. ¶¶ 23-24.

In *Wright v. Smith*, the Second Circuit considered whether the Commissioner of the New York Department of Correctional Services was personally involved in a civil rights violation against a prisoner. 21 F.3d 496, 497 (2d Cir. 1994). The prisoner alleged that he was involuntarily confined in a solitary housing unit (SHU) for sixty-seven days without a hearing in violation of the Fourteenth Amendment and Section 1983, and that he had written a letter to the Commissioner informing the Commissioner of these violations. *Id.* at 497. The Second Circuit found that the Commissioner had not been personally involved in the alleged violation because:

> In the letter, which was addressed not to Coughlin but to Governor Cuomo, Wright did complain generally about the conditions in which he was confined, but nowhere stated that he was being retained in the SHU without a hearing, or that he had been deprived of any rights connected with a hearing . . . Hence, Coughlin was never put on actual or constructive notice of the violation. . . . The plaintiff does not allege that Coughlin created a policy or custom under which the violation occurred or acted negligently in managing subordinates who caused the violation. Nor can Coughlin be held personally responsible simply because he was in a high position of authority in the prison system.

*Id.* at 501.

In *Colon v. Coughlin*, the Second Circuit considered whether the Superintendent of CCF, who had received a letter "complaining that contraband had been planted in [the plaintiff's] cell, and [who] took no action to investigate," was personally involved in an alleged violation of the plaintiff's rights under Section 1983. *Colon*, 58 F.3d at 873. The court found that the plaintiff had not established a triable issue of fact because "[t]he contents of the letter [were] not specified; [the court did] not know, therefore, whether the letter was one that reasonably should

have prompted [the Superintendent] to investigate." *Id.* In addition, the plaintiff admitted that the letter predated a scheduled hearing, and the court found that the Superintendent should not have been required to intervene "in advance of an established procedure in which Colon was to be given the opportunity to substantiate the claim that he made in his letter." *Id.* The court concluded that "no reasonable jury could have held [the Superintendent] liable." *Id.*

The allegations in this case present a slightly different issue than either of these cases. First, compared to *Wright*, Mr. Yagaloff allegedly did have notice of the alleged constitutional violation. The Commissioner in *Wright* may have never received a letter complaining of a constitutional violation—the letter in the record was addressed to Governor Cuomo—and therefore he was "never put on actual or constructive notice of the violation." *Wright*, 21 F.3d at 501. Second, compared to both the Commissioner in *Wright* and Mr. Coughlin in *Colon*, Mr. Yagaloff was not, according to the Complaint in a position where he was a policy maker for the town. Rather, he was a lawyer explaining the justification for a town ordinance. Thus, although *Colon* establishes that a supervisor could be liable if the supervisor, "after being informed of the violation through a report or appeal, failed to remedy the wrong," here, Plaintiffs have failed to establish that Mr. Yagaloff was a supervisor who had the authority to remedy the wrong. *See Colon*, 58 F.3d at 873; *see also Jackson*, 2015 WL 1245850, at *6 (discussing supervisor's liability when personally involved in tort).

Defendants' motion to dismiss Count One against Mr. Yagaloff is therefore granted, but Plaintiffs may amend the Complaint to allege facts that would support Mr. Yagaloff's personal involvement, to the extent such facts exist.

### c. Ms. Lipe, Dr. Anwar, Mr. Delnicki, and Ms. Oliva

The Town Defendants also argue that Plaintiffs have failed to allege that Ms. Lipe, Dr. Anwar, Mr. Delnicki, Mr. Yagaloff, and Ms. Oliva were personally involved in the alleged unconstitutional search and seizure of Plaintiffs' property. First Mot. Dismiss at 7. Defendants argue that "[t]he Complaint states that only Defendant Galligan, Mitchell, and John Does 1-10 were present when the alleged search and seizure took place" and that, as a result, Plaintiffs have failed to allege that Defendants Lipe, Anwar, Delnicki, and Oliva were personally involved in the alleged violation. *Id.*

Plaintiffs respond that Defendants participated in a town meeting that targeted Plaintiffs' property because Defendants "simply didn't like the way Plaintiffs chose to live their life." Obj. to Mot. Dismiss at 7. Plaintiffs assert that the town meeting led to an ordinance directed at Plaintiffs' property, which resulted in a "direct order" to address the apparent blight on Plaintiffs' property, which eventually led to the trespass onto Plaintiffs' property and removal of their belongings. *Id.* at 8.

Plaintiffs have not alleged sufficient facts to establish that these Defendants were personally involved in "violat[ing] Plaintiffs' Fourth Amendment rights under the U.S. Constitution and Art. I, Section 7 of the Connecticut Constitution to be free from unreasonable searches of their Property and unreasonable seizures of their Personal Property by confiscating and then dissipating the Personal Property either through its destruction or appropriation by the Defendants." Compl. ¶ 27. This Count addresses an alleged decision by Mr. Yagaloff to direct Mr. Galligan and others to go to Ms. Norton's house and remove some of her personal property. *See Colon*, 58 F.3d at 873 (explaining that supervisor's personal involvement can be established by showing: "(1) the defendant participated directly in the alleged constitutional violation, (2) the

defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring").

Plaintiffs, however, have not alleged sufficient personal involvement in the alleged Fourth Amendment and Article I, Section 7 violations to hold them liable under Section 1983. *See Anderson v. Ford*, No. 3:06-cv-1968 (HBF), 2007 WL 3025292, at *6 (D. Conn. Oct. 16, 2007) (dismissing for lack of personal involvement as to the defendants who saw letters about the plaintiff's medical condition, but did not treat him or supervise his treatment). Plaintiffs allege that Ms. Oliva and Ms. Lipe were rude to Ms. Norton at the South Windsor Planning & Zoning Office: that "Defendant Lipe rudely snapped at [her], telling her to clean up the Property," and "Defendant Oliva claimed there was still blight and that Plaintiff Norton needed to remove the camper." Compl. ¶ 20. Ms. Oliva and Ms. Lipe's alleged comments at the Planning & Zoning Office do not amount to personal involvement in a violation of her right to be free from unreasonable searches and seizures.

Plaintiffs also allege that "Defendants Delnicki and Anwar of the Town Council demand[ed] immediate action in regard to Plaintiff's property." Compl. ¶ 22. Plaintiffs allege that:

> At the commencement of the hearing, everyone on the Town Council stood quietly while Defendant Delnicki said the following prayer: 'Heavenly Father, tonight we convene again to do the people's business. Help us always to keep the less fortunate than us in mind as we deliberate . . . Amen.' The revised blight ordinance was then passed with Defendants Delnicki and Anwar of the Town

> Council demanding immediate action in regard to Plaintiff's property.

Compl. ¶ 22. These allegations, as well, only discuss the passing of legislation, not the personal involvement in the actual search and seizure of the Plaintiff's' property. It is the critical difference between town officials passing an ordinance to address an issue and the town officials who actually engage with citizens in addressing it. *Cf. Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) ("Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'") (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)); *see also Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 441 U.S. 391, 404 (1979) (holding that local councilmen—members of regional planning agency—enjoyed legislative immunity); *Olma v. Collins*, 499 Fed. App'x 98, 99 (2d Cir. 2012) ("State, regional, and local legislators are entitled to absolute immunity from liability under 42 U.S.C. § 1983 for official action undertaken in 'the sphere of legitimate legislative activity.'") (quoting *Tenney*, 341 U.S. at 376)).

Because Plaintiffs have done nothing more than allege that Mr. Delnicki and Dr. Anwar participated in a Town Council meeting and then "demand[ed] immediate action in regard to Plaintiff's property," Compl. ¶ 22, Defendants' motion to dismiss Count One as to Delnicki and Anwar therefore is granted. *See Olma*, 499 Fed. App'x at 499 (finding that legislative immunity applies for county legislators who approved a budget amendment that eliminated a plaintiff's job).

**B.     Motion to Dismiss Filed by ESI Defendants**

ESI Defendants argue that Counts Two, Three, and Five should be dismissed. Memo. Mot. Dismiss, ECF No. 35. Because, as discussed above, Counts Two, Three and Five have been dismissed as to all Defendants, their motion to dismiss is granted.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED IN PART** and **DENIED IN PART**.

Defendants' motion to dismiss Count One is **DENIED** as to Defendant Galligan, and **GRANTED** as to Defendants Lipe, Anwar, Delnicki, Yagaloff, and Oliva for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Plaintiffs may serve an Amended Complaint within twenty-one days of this Order, if they wish to address the dismissed claims against these Defendants.

Defendants' motion to dismiss Count Two is **GRANTED** for lack of subject-matter jurisdiction under Rule 12(b)(1).

Defendants' motion to dismiss Count Three is **GRANTED** for lack of subject matter jurisdiction under Rule 12(b)(1).

Defendants' motion to dismiss Count Five is **GRANTED**, as Plaintiffs do not oppose the motion.

Because Counts Two, Three, and Five are dismissed, the ESI Defendants' motion to dismiss is **GRANTED**.

SO ORDERED at Bridgeport, Connecticut, this 25th day of January, 2018.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE