# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KRISTIN NORTON and ROCK WILLIAMS,

     Plaintiffs,

     v.

MATTHEW B. GALLIGAN, TOWN OF
SOUTH WINDSOR, KEITH YAGALOFF,
ESQ., BILLY MITCHELL A/K/A WILLIAM
MITCHELL, ENVIRONMENTAL
SERVICES, INC.,

     Defendants.

No. 3:17-cv-395 (VAB)

## RULING ON MOTIONS TO DISMISS

Kristin Norton and Rock Williams ("Ms. Norton and Mr. Williams" or "Plaintiffs") filed this lawsuit against Matthew Galligan, the Town of South Windsor, Thomas Delnicki, Michele Lipe, Pamela Oliva, Keith Yagaloff, Dr. M. Saud Anwar, Billy Mitchell, Environmental Services, Inc., and John Does 1-10, alleging civil rights violations under Section 1983, the Connecticut Constitution, and the common law. Compl., ECF No. 1.

Defendants previously filed two motions to dismiss, which were granted in part and denied in part; the Court also granted Plaintiffs leave to amend to correct deficiencies in the original Complaint. *See* ECF No. 49 (Order granting in part and denying in part Town Defendants' motion to dismiss); ECF No. 50 (Order granting ESI Defendants' motion to dismiss).

Plaintiffs filed an Amended Complaint on February 14, 2018. Am. Compl., ECF No. 51. The Amended Complaint again alleges violations under Section 1983, the Connecticut

Constitution, and the common law against Mr. Galligan, the Town of South Windsor, Keith Yagaloff, Esq., Billy Mitchell, and Environmental Services, Inc. Am. Compl. ¶¶ 22–31.

Defendants again have filed two motions to dismiss the Amended Complaint. The first, filed by the Town of South Windsor, Mr. Galligan, and Mr. Yagaloff ("Town Defendants"), asserts that Plaintiffs have failed to state a claim, and dismissal therefore is warranted under Federal Rule of Civil Procedure 12(b)(6), and that Plaintiffs have exceeded the scope of the Court's leave to amend. Town Second Mot. Dismiss at 1–2, ECF No. 52. The second, filed by Environmental Services, Inc., and Mr. Mitchell ("ESI Defendants"), asserts that Counts One and Two should be dismissed as to the ESI Defendants because those Defendants acted as agents of the Town of South Windsor. ESI Second Mot. Dismiss at 1, ECF No. 53.

For the following reasons, the Town Defendants' motion to dismiss Count One is **DENIED** and their motion to dismiss Count Two is **GRANTED**. The ESI Defendants' motion to dismiss Count One is **DENIED** and their motion to dismiss Count Two is dismissed as moot.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations[1]

Ms. Norton owns a single-family house in South Windsor, where she lives with her twenty-four year old son, as well as Mr. Williams. Am. Compl. ¶¶ 4, 12. For work, Ms. Norton cleans out foreclosed homes and either collects abandoned items or buys them at flea markets, yard sales, and antiques shops. *Id.* ¶ 12. Ms. Norton organizes and stores the items in her backyard, and then sells them at flea markets, tag sales, and auctions. *Id.* Mr. Williams helps Ms. Norton clean homes and collect items. *Id.* ¶ 13.

---

[1] The factual allegations are adapted from the Court's Order ruling on the first set of motions to dismiss, ECF No. 49, and updated as necessary to reflect the allegations and citations in the Amended Complaint.

In 2014, Ms. Norton allegedly received a notice from South Windsor claiming that her property was blighted and that the Town intended to place a lien on the property. *Id.* ¶ 14. Ms. Norton allegedly called Pamela Oliva, the Zoning Enforcement Agent of the Town, and asked how she could fix the problem. *Id.* Ms. Oliva allegedly responded that Ms. Norton needed to install a fence or put her personal property in a garage. *Id.* Ms. Norton allegedly installed, "at considerable cost and expense," a six-foot fence that surrounded the backyard. *Id.*

Ms. Norton allegedly did not hear from Defendants again until 2015, when Mr. Yagaloff, the town attorney, called her to tell her that the camper was still visible over the top of the fence, and, because of a gap in the fence, the personal property in the backyard was also still visible. *Id.* ¶ 15. Mr. Yagaloff allegedly did not mention a blight lien "or any present danger to the public." *Id.* Plaintiffs allegedly repaired the gap in the fence, but Mr. Yagaloff called several more times to say that the camper was still visible. *Id.* Ms. Norton allegedly went to South Windsor's Planning & Zoning office, where she asked Ms. Oliva and Ms. Lipe how she could remediate the alleged blight. *Id.* Ms. Norton claims that "Defendant Lipe rudely snapped at [her], telling her to clean up the Property," and "Defendant Oliva claimed there was still blight and that Plaintiff Norton needed to remove the camper." *Id.* Shortly after that conversation, Ms. Norton allegedly removed the camper and believed she had solved the problem. *Id.* Plaintiffs claim that "[a]t this point, the fence completely encircled the backyard of the Property thereby shielding from public view all of the Personal Property stored in the backyard." *Id.*

On January 4, 2016, the Town Council allegedly held a meeting "where members of both the Town Council and participants voiced their opinions about the Property, calling it 'pathetic', 'an untenable situation', 'the worst of the worst'." *Id.* ¶ 16. Mr. Yagaloff allegedly said that Plaintiffs were "the 2% of folks that don't care about their community or themselves." *Id.*

On January 19, 2016, the South Windsor Town Council held another public hearing and approved a revised blight ordinance. *Id.* ¶ 17.

Plaintiffs allege that "[o]n April 19, 2016, with absolutely no prior notice, Defendants Galligan and Mitchell suddenly appeared at the Plaintiff's Property, trespassed upon the Plaintiff's property and began to peer over the top of the stockade fence whereupon Plaintiff Rock [Williams], now alerted to their presence, asked them to leave." *Id.* ¶ 18. Mr. Galligan and Mr. Mitchell allegedly ignored Mr. Williams and told him that they would return the next day to remove the personal property. *Id.*

In response, Ms. Norton went to the Town Hall to speak to Mr. Galligan. *Id.* Plaintiffs allege that "[h]e began rudely and loudly yelling at her thereby causing Plaintiff Norton fear and trepidation and she left in frustration without any explanation as to the Town's specific concerns or proposed actions." *Id.* Ms. Norton allegedly also called Mr. Yagaloff, who "assured her that Defendant Galligan was not seizing everything, only hazardous materials that Galligan deemed a danger to the health, safety and welfare of the public." *Id.*

On April 20, 2016, Plaintiffs allege that Defendants and John Does acting under their control, with no notice, warrant, court order, or administrative procedure, and no "probable cause to suspect that a crime had taken place, or reasonable suspicion that a crime might take place, and with no identifiable threat to the health, safety or welfare of the public, appeared unannounced en masse at the Property." *Id.* ¶ 19. Plaintiffs allege that Defendants broke through their fence and told Plaintiffs that "if they interfered with the seizure and removal of any of the Personal Property, they would be placed under arrest." *Id.*

Plaintiffs allege that "Defendant ESI, with Defendants Mitchell and Galligan supervising removed Plaintiffs' Personal Property, including inventory, antiques and collectibles, filling

approximately 10 – 12 large roll off dumpsters[.]" *Id.* Plaintiffs also allege that they observed "various agents and employees of the town of South Windsor putting some of the Personal Property in their cars for their own use and conversion." *Id.* Mr. Galligan and Mr. Mitchell allegedly refused to tell Plaintiff where or whether the property would be stored. *Id.* Mr. Yagaloff, whom Plaintiffs allege "was at the real property during this unlawful conduct and observed the actions of his fellow defendants," allegedly explained to Ms. Norton that the property was being removed to prevent the spread of the Zika virus, and "told Plaintiff Norton 'Don't worry; you won't be paying for this, the bank will. In fact, if it will help you out, put more stuff you don't want in the backyard and the bank will pay for its removal.'" *Id.* The personal property allegedly consisted of "valuable framed antique photographs, antique books and furniture, works of art, tools, farm and garden equipment, lawn furniture, household furnishings, working appliances and Plaintiff Williams'[s] tools of trade and valuable scrap metal," totaling over $100,000. *Id.*

Ms. Norton claims that, as a result of the seizure of her property, she could no longer make a living and was forced to file for Chapter 7 bankruptcy. *Id.* ¶ 20. She then discovered that a blight lien was recorded against the Property. *Id.* Plaintiffs claim that "Defendants caused damage to Plaintiffs by, *inter alia*, trespassing upon her home and property, violating their civil rights, seizing without cause and just compensation the Personal Property, and harming their ability to make a living so as to provide life's basic necessities such as food, clothing, shelter, etc." *Id.* ¶ 21. Plaintiffs also allege that they "suffered embarrassment and ridicule which was embarrassing, demeaning, threatening and demoralizing to Plaintiffs" and that Defendants caused Plaintiffs "mental anguish, fear and trepidation[.]" *Id.*

## B.    Procedural History

On March 8, 2017, Plaintiffs filed their original Complaint, alleging a variety of claims. Compl., ECF No. 1. First, Plaintiffs alleged that all Defendants violated Plaintiffs' right to be secure from unreasonable searches and seizures under the Fourth Amendment, 42 U.S.C. § 1983, and Article I, Section 7 of the Connecticut Constitution. *Id.* at 10. Second, they alleged that all Defendants violated Plaintiffs' right to due process of law under the Fifth and Fourteen Amendments, 42 U.S.C. § 1983, and Article I, Section 8 of the Connecticut Constitution. *Id.* at 10–11. Third, Plaintiffs alleged that all Defendants violated Plaintiffs' right to just compensation under the Fifth and Fourteenth Amendments, 42 U.S.C. § 1983, and Article I, Section 11 of the Connecticut Constitution. *Id.* at 11. Fourth, Plaintiffs alleged that Mr. Yagaloff made a slanderous statement about Plaintiffs. *Id.* at 12. Fifth, Plaintiffs alleged that all Defendants intentionally trespassed on Plaintiffs' property. *Id.* at 12–13.

On May 30, 3017, the Town of South Windsor, Matthew Galligan, Thomas Delnicki, Michele Lipe, Pamela Oliva, Keith Yagaloff, and Dr. M. Saud Anwar filed a motion to dismiss. Town First Mot. Dismiss, ECF No. 26. They moved to dismiss Counts One, Two, Three, and Five as to Defendants Lipe, Anwar, Delnicki, Yagaloff, Oliva, and Galligan under Rule 12(b)(6), asserting that Plaintiffs failed to state a claim upon which relief can be granted because Defendants were not alleged to be personally involved in the conduct at issue. *Id.* at 4, 9. They also moved to dismiss Count Three for lacking subject-matter jurisdiction under Rule 12(b)(1), asserting that Plaintiffs' claim that they were deprived of just compensation was not ripe for adjudication. *Id.* at 10.

These Defendants also argued that, to the extent that Count Two brought a substantive due process claim, it should have been dismissed because there were specific sources of

constitutional protection for the claims that Plaintiffs had made. *Id.* at 13. Finally, they moved to dismiss Count Five under Rule 12(b)(6) for failing to state a claim upon which relief could be granted because "trespass to land is an intentional tort for which a municipality and its employees cannot be held liable." *Id.* at 15.

On July 24, 2017, the ESI Defendants also filed a motion to dismiss Counts Two, Three, and Five. ESI First Mot. Dismiss, ECF No. 34. As to Count Two, they argued that, "[t]o the extent that the plaintiffs allege a substantive due process violation, that claim should be dismissed because there is an explicit source of constitutional protection in the Fourth and Fifth Amendments." *Id.* at 4. As to Count Three, they asserted that the claim for just compensation was not ripe for adjudication. *Id.* at 6. As to Count Five, they claimed that they were agents of the Town entitled to governmental immunity against claims for trespass. *Id.* at 9.

The Court held a hearing on January 23, 2018, and then, on January 25, 2018, issued an Order granting in part and denying in part Defendants' motions to dismiss. ECF Nos. 49, 50. The Court made the following rulings:

- The Court dismissed Count Five because the parties had agreed that governmental immunity precluded the claim. Order at 9, ECF No. 49.

- The Court granted the motion to dismiss Count Three for lack of subject-matter jurisdiction, finding that Plaintiffs had failed to allege that they unsuccessfully sought compensation through Connecticut's procedure for takings of property. *Id.* at 12.

- The Court also granted the motion to dismiss Count Two, finding that Plaintiffs' procedural due process claim was unripe because Plaintiffs had not yet availed themselves of the Connecticut procedure for takings of property. *Id.* at 14.

- The Court denied the motion to dismiss Count One against Mr. Galligan, finding that Plaintiffs had sufficiently alleged his personal involvement in taking Ms. Norton's belongings (or supervising their being taken) under Section 1983. *Id.* at 18.

- The Court granted the motion to dismiss Count One against Mr. Yagaloff because Plaintiffs had not sufficiently alleged that he personally removed Ms. Norton's belongings or supervised their removal under Section 1983. *Id.* at 21.

- The Court granted the motion to dismiss all claims against Defendants Lipe, Anwar, Delnicki, Yagaloff, and Oliva, finding that Plaintiffs had not sufficiently alleged their personal involvement. *Id.* at 23–24.

- Finally, the Court found the ESI Defendants' motion to dismiss Counts Two, Three, and Five moot because those claims had already been dismissed on other grounds. *Id.* at 24.

The Court also granted Plaintiffs twenty-one days to amend their Complaint to address the dismissed claims. *Id.* at 25.

On February 14, 2018, Plaintiffs filed an Amended Complaint. Am. Compl., ECF No. 51. Plaintiffs allege largely the same facts in the Amended Complaint as the original Complaint, and assert three legal claims. First, Plaintiffs claim that Defendants violated their rights to be free from unreasonable searches and seizures under the Fourth Amendment and 42 U.S.C. § 1983, as well as under Article I, Section 7 of the Connecticut Constitution. Am. Compl. at 9. Second, Plaintiffs claim that Defendants' actions amounted to inverse condemnation under Article I, § 11 of the Connecticut Constitution. *Id.* at 10. Third, Plaintiffs claim that Mr. Yagaloff's statement "that Plaintiffs are 'the 2% of folks that don't care about their community or themselves' was false and defamatory per se" and amounted to slander under the common law. *Id.* at 10–11.

On February 21, 2018, the Town Defendants filed a motion to dismiss the Amended Complaint. Town Second Mot. Dismiss, ECF No. 52. The Town Defendants claim that Count One should be dismissed as to Mr. Yagaloff because Plaintiffs failed to allege that he was personally involved in the deprivation of their property. *Id.* at 5–7. The Town Defendants also claim that Count Two should be dismissed because, by alleging a new claim for inverse condemnation, Plaintiffs have exceeded the scope of the Court's leave to amend and failed to demonstrate good cause to amend. *Id.* at 8–14.

On March 8, 2018, the ESI Defendants filed a motion to dismiss the Amended Complaint. ESI Second Mot. Dismiss, ECF No. 53. The ESI Defendants argue that Count One

should be dismissed against them because the ESI Defendants are the agents of the Town, and not responsible for any "separate agent liability." *Id.* at 5. The ESI Defendants also argue that Count Two should be dismissed against them because they are not government officials and therefore cannot be liable for inverse condemnation. *Id.* at 6.

## II.     STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and the court will dismiss any claim that fails "to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), the court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

At this stage, the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views allegations in the light most favorable to the plaintiff, and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359

(2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir.) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), cert. denied, 537 U.S. 1089 (2002).

In addition, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *Id.* In evaluating whether the plaintiff has established that the court has subject matter jurisdiction, "the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

## III. DISCUSSION

Two motions to dismiss have been filed in this case. First, the Town Defendants filed a motion to dismiss Count One against Mr. Yagaloff and to dismiss Count Two against all Defendants. Second, the ESI Defendants argue that Counts One and Two should be dismissed against them. Neither party moves to dismiss Count One against Mr. Galligan or the Town of South Windsor, or to dismiss Count Three against Mr. Yagaloff; those claims will proceed.

For the following reasons, the Town Defendants' second motion to dismiss Count One is denied; the Town Defendants' second motion to dismiss Count Two is granted; the ESI

Defendants' second motion to dismiss Count One is denied; and its motion to dismiss Count Two is dismissed as moot.

**A.      The Town Defendants' Motion to Dismiss Count One against Mr. Yagaloff**

The Town Defendants move to dismiss Count One as to Mr. Yagaloff, claiming that Plaintiffs have not alleged sufficient facts to establish his personal involvement in a taking of their property. Town Second Mot. Dismiss at 4, 7. The Court disagrees.

Count One alleges that all Defendants violated Plaintiffs' federal and state rights to be free from unreasonable searches and seizures by coming to Ms. Norton's house without permission or a warrant and seizing her personal property. Compl. ¶ 22. Specific to Mr. Yagaloff, the Amended Complaint alleges that he was "at the real property during the this unlawful conduct and observed the actions of his fellow defendants[.]" *Id.* ¶ 19.  Plaintiffs also allege that, when asked how the personal property was affecting the health, safety, and welfare of local residents, Mr. Yagaloff responded that "it was being removed to prevent the public from contracting the Zika virus." *Id.* Mr. Yagaloff also allegedly told Ms. Norton, "Don't worry, you won't be paying for this, the bank will. In fact, if it will help you out, put more stuff you don't want in the backyard and the bank will pay for its removal." *Id.*

"Section 1983 provides a federal remedy for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Golden State Transit Corp. v. City of L.A.*, 493 U.S. 103, 105 (1989) (quoting 42 U.S.C. § 1983); *see also Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976) (explaining that "[t]he plain words of [Section 1983] impose liability whether in the form of payment of redressive damages or being placed under an injunction only for conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws"). "The first inquiry in any § 1983 suit . . . is whether the plaintiff has

been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140 (1979) (quoting 42 U.S.C. § 1983). Second, the plaintiff must show that "[t]he conduct at issue '[was] committed by a person acting under color of state law.'" *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

In addition, the plaintiff must show that the person acting under color of state law was personally involved in the alleged constitutional deprivation. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1987 (1978))); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation."); *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Direct participation is one way to establish personal involvement under Section 1983. *See Johnson v. Glick*, 481 F.2d 1028, 1033–34 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973) (finding prison guard liable for beating inmate). Direct participation is not required, however, to support personal involvement. *See Colon*, 58 F.3d at 873 (explaining that supervisor could be liable for constitutional violation if "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong"); *see also Jackson v. Town of Bloomfield*, No. 3:12-cv-00924 (MPS), 2015 WL 1245850, at *6 (D. Conn. 2015) (finding that supervisor's "liability may

arise from their personal involvement as supervisors even if they did not directly commit the torts").

The plaintiff may establish that the defendant was personally involved in the underlying alleged conduct by showing that the defendant "(i) personally participated in the alleged constitutional violation, (ii) was grossly negligent in supervising subordinates who committed the wrongful acts, or (iii) exhibited deliberate indifference to the rights of the plaintiff by failing to act on information indicating that unconstitutional acts were occurring." *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). "Personal involvement includes direct participation, but only if the defendant was aware or had notice of the facts that rendered the action illegal." *Murvin v. Jennings*, 259 F. Supp. 2d 180, 190 (D. Conn. 2003) (denying summary judgment where there was a factual issue as to whether the defendant knew exonerating information about a suspect and still aided in his arrest) (citing *City of Newburgh*, 262 F.3d at 155).

Defendants argue that Plaintiffs have failed to establish Mr. Yagaloff's personal involvement in any constitutional violation because although "he acted as a lawyer explaining the justification for the Town's ordinance to the plaintiffs . . . [t]here are no allegations that Attorney Yagaloff was a ***policy maker*** or a ***supervisor*** who had authority to remedy the alleged wrong." Town Second Mot. Dismiss at 7. Defendants therefore argue that Plaintiffs failed to allege Mr. Yagaloff's personal involvement. *Id.*

Plaintiffs respond that, as the Town's attorney, Mr. Yagaloff's presence on the property "commanded respect and provided him with the authority to speak out and stop the unlawful conduct at any time." Opp. to Town Second Mot. Dismiss at 6. Plaintiffs argue that, rather than stop the seizure of Ms. Norton's belongings, Mr. Yagaloff "*encouraged* the wrongful conduct to

continue by informing plaintiff Norton to bring additional personal property out of her home so that it could be removed at the bank's expense." *Id.* at 6–7.

In light of Plaintiffs' new allegations that Mr. Yagaloff, the Town lawyer, was present at Ms. Norton's house while her belongings were being taken by government employees, the Court finds that Plaintiffs have alleged sufficient facts to state a plausible claim for relief for unreasonable searches and seizures. *See Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (holding that supervisory liability under Section 1983 could be found when "the defendant exhibited deliberate indifference to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring") (quoting *Colon*, 58 F.3d at 873); *see also Jackson v. Town of Bloomfield*, No. 3:12-cv-00924 (MPS), 2015 WL 1245850, at *6 (D. Conn. 2015) (finding that supervisor's "liability may arise from their personal involvement as supervisors even if they did not directly commit the torts"). The Court therefore denies the motion to dismiss the Section 1983 claim against him.

### B.      The Town Defendants' Motion to Dismiss Count Two

The Town Defendants also move to dismiss Count Two, arguing that Plaintiffs have improperly added a new claim of inverse condemnation to their Complaint. Town Second Mot. Dismiss at 8 ("The plaintiffs' attempt [to amend] is improper because the scheduling order deadline for amendments has expired, the plaintiffs never sought permission to amend, and the Court never granted the plaintiffs permission to add a new cause of action."). The Town Defendants argue that the Amended Complaint exceeds the scope of the Court's leave to amend because the original Complaint included takings claims under the Fifth Amendment's Just Compensation Clause and the Connecticut Constitution, Article I, Section 11, which were dismissed, and the Amended Complaint asserts a new claim for inverse condemnation. *Id.* at 8–9.

The Town Defendants argue that the Court's ruling in its Order granting in part and denying in part the first set of motions to dismiss permitted Plaintiffs to serve an Amended Complaint only to address Count One (unlawful search and seizure), not to amend the Complaint as to Count Three (unjust compensation) or to assert a new claim. *Id.* at 9–10.

The Town Defendants argue that because the time to amend the Complaint as of right under Federal Rule of Civil Procedure 15(a)(2), Plaintiffs were required to obtain opposing counsel's consent or leave from the Court to amend the Complaint. *Id.* at 10 (citing Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave."). "[B]ecause the plaintiffs never sought or obtained permission to amend the complaint and add a new claim for inverse condemnation, Count Two should be dismissed," *id.*, the Town Defendants argue that they will be prejudiced because Defendants already prepared written discovery and have prepared for depositions, without considering this added claim. *Id.* at 12.

The Town Defendants also argue that, even if the Court granted leave to amend, amendment in this case would be futile because Plaintiffs' inverse condemnation claim "must be brought in state court in the first instance[.]" *Id.* at 14 (quoting *Wellswood Columbia, LLC v. Town of Hebron*, No. 3:10-cv-01467 (VLB), 2013 WL 356619, at *3 (D. Conn. Jan. 29, 2013)).

Plaintiffs respond that Defendants will not be prejudiced by the addition of an inverse condemnation claim to the Complaint, and that amendment would not be futile. *Id.* at 8–9. Because the Court has supplemental jurisdiction over their inverse condemnation claim, they argue that their amendment will not be futile, and, in any event, "*Williamson County* is, for reasons set forth below, perhaps the most unworkable and irrational decision in the history of the Supreme Court," and it is "currently up for reconsideration . . . and by all accounts, the absurd

requirement that a party must first go to state court <u>and lose</u> before bringing their taking claims to federal court will soon be abolished." *Id.* at 9. Plaintiffs include excerpts from the briefing in *Knick v. Township of Scott*, Supreme Court Case No. 17-647, which Plaintiffs argue will reverse *Williamson County*. *Id.* at 9–11. The Court disagrees.

As a preliminary matter, Plaintiffs did not need to seek additional leave to amend the Complaint from the Court or from opposing counsel to add a claim. *See* Fed. R. Civ. P. 15(a)(2) (providing that a party that seeks to amend its pleading more than 21 days after serving it "may amend its pleading only with the opposing party's written consent or the court's leave"). The Court dismissed Count Three of the original Complaint for lack of jurisdiction, finding that Connecticut provides an adequate procedure under Article I, Section 11 for obtaining compensation after an alleged taking, and under *Williamson County*, Plaintiffs must allege that they have unsuccessfully sought compensation through that procedure before asserting a takings claim in federal court. *See* Order at 14. The Court then granted Plaintiffs permission to file an Amended Complaint:

> Defendants' motion to dismiss Count One is **DENIED** as to Defendant Galligan, and **GRANTED** as to Defendants Lipe, Anwar, Delnicki, Yagaloff, and Oliva for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Plaintiffs may serve an Amended Complaint within twenty-one days of this Order, if they wish to address the dismissed claims against these Defendants. . . . Defendants' motion to dismiss Count Three is **GRANTED** for lack of subject matter jurisdiction under Rule 12(b)(1).

Order at 25. In the Amended Complaint, Plaintiffs now try to allege that inverse condemnation can be addressed through this litigation, and not through a separate state court proceeding. Plaintiffs' new claim thus is not truly distinct from its earlier pleading, and the Court therefore will consider this claim.

The Court agrees, however, with Defendants that Count Two should be dismissed because Plaintiffs' claim for inverse condemnation is not ripe, as Plaintiffs have not exhausted their state remedies.[2] *See Williamson Cty.*, 473 U.S. at 195 (requiring a plaintiff to seek available compensation from state government as long as there is a "reasonable certain and adequate provision for obtaining compensation"); *Wellswood Columbia*, 2013 WL 356619, at *3 ("Article First, § 11 of the Connecticut Constitution, which states that '[t]he property of no person shall be taken for public use, without just compensation,' provides an adequate procedure for a plaintiff alleging a takings claim to obtain just compensation for a taking.") (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 380 (2d Cir. 1995) ("This clause may be used as the basis of an inverse condemnation action to recover compensation for property taken from private individuals.")).

Plaintiffs thus have failed to satisfy the ripeness requirements that would give this Court jurisdiction to hear a constitutional takings claim. *See* Town Defs.' Reply at 5, ECF No. 58; *see also, e.g.*, *Villager Pond*, 56 F.3d at 380 (requiring the plaintiff "to look to the state for compensation before its takings claim will lie"); *Williamson Cty.*, 473 U.S. at 186 ("[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final

---

[2] A plaintiff who asserts a successful inverse condemnation claim under Article I, Section 11 of the Connecticut Constitution, is entitled to "compensation under the takings clauses of the fifth amendment to the United States constitution and article first, § 11 of the constitution of Connecticut." *Cumberland Farms, Inc. v. Town of Groton*, 262 Conn. 45, 47–48 (2002); *see also Southview Assoc., Ltd. v. Bongartz*, 980 F.2d 84, 93 n.3 (2d Cir. 1992), *cert. denied*, 507 U.S. 987 (1993) ("[A] regulatory taking—also known as inverse condemnation—occurs when the purpose of government regulation and its economic effect on the property owner render the regulation substantially equivalent to an eminent domain proceeding and, therefore, require the government to pay compensation to the property owner.").

decision regarding the application of the regulations to the property at issue."). While Plaintiffs claim that *Williamson County* may no longer be good law for long, the Court nevertheless is bound to follow the law as it is, not as one party hopes it someday will be. *See Clear Channel Outdoor, Inc. v. City of New York*, 594 f.3d 94, 107–08 (2d Cir. 2010) ("In resolving disputes, we 'should follow the case which directly controls.'") (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) (explaining that a Court of Appeals should not overrule Supreme Court precedent and should leave to the Supreme Court "the prerogative of overruling its own decisions")).

The Court therefore dismisses Count Two for lack of jurisdiction.

### C.     The ESI Defendants' Motion to Dismiss Counts One and Two

Because the Court has already dismissed Count Two for lack of subject-matter jurisdiction, the ESI Defendants' motion to dismiss Count Two is moot.

As to Count One, the ESI Defendants move to dismiss because "[t]hey were agents/servants of the Town during the events as alleged in the Amended Complaint" and did not "deviate[] from the control and authority of the Town." Mot. Dismiss at 5 (citing, *e.g.*, *Pelletier v. Bilbiles*, 154 Conn. 544, 547 (1967) ("A master is liable for the wilful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business.")). The ESI Defendants argue that, because they were not "acting outside of the scope of authority and control of the Town," the separate claims against the ESI Defendants for the unreasonable search and seizure of Plaintiffs' property must be dismissed. *Id.* at 5–6.

Plaintiffs respond that any agency relationship between the ESI Defendants and the Town does not relieve the ESI Defendants from liability under Section 1983. Obj. to ESI Second Mot. Dismiss at 2, ECF No. 60. Plaintiffs argue that Section 1983 "does not distinguish between a

principal and their agent, or a master and their servant, as the defendants have asked this court to do." *Id.*

The Court agrees that the ESI Defendants' agency theory does not preclude liability under Section 1983. Section 1983 considers whether each individual defendant was personally involved in the alleged constitutional deprivation. *See Williams*, 781 F.2d at 323 ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (quoting *McKinnon*, 568 F.2d at 934); *see also Iqbal*, 556 U.S. at 676 (holding that "vicarious liability is inapplicable to *Bivens* and § 1983 suits," and, as a result, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). In the Amended Complaint, Plaintiffs sufficiently alleged that the ESI Defendants were personally involved in taking Ms. Norton's personal belongings. *See Johnson v. Glick*, 481 F.2d 1028, 1033–34 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1972) (finding that prison guard's personal involvement in beating an inmate constituted personal involvement under Section 1983); *see also Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"). While the ESI Defendants may have a claim for indemnity against the Town, depending on their contract with the Town and whether they acted within its scope, they have identified no precedent for suggesting that it results in no liability against them at all under an agency theory.

Now, at oral argument, the ESI Defendants asserted that the U.S. Supreme Court's decision in *Filarsky v. Delia*, 566 U.S. 377 (2012), supports its theory that, as an agent of the

Town, the ESI Defendants cannot be held liable for removing Plaintiffs' property. The Court disagrees.

While that case suggests that the ESI Defendants, as agents of the Town, would be entitled to assert qualified immunity in defense of this action, it does not otherwise absolve the ESI Defendants from liability simply because they are agents of the Town. Indeed, in *Filarsky*, the Supreme Court did not hold that private individuals acting at the direction of a municipality were shielded from liability through agency principles. But private individuals who "work in close coordination with public employees, and face threatened legal action for the same conduct" enjoy the same immunities that government employees do. *Id.* at 391 (responding to fear that "[b]ecause government employees will often be protected from suit by some form of immunity, those working alongside them could be left holding the bag—facing full liability for actions taken in conjunction with government employees who enjoy immunity for the same activity" and therefore "any private individual with a choice might think twice before accepting a government assignment").

The Supreme Court therefore found that qualified immunity applied to a defendant who, "[t]hough not a public employee, [ ] was retained by the City to assist in conducting an official investigation into potential wrongdoing," and where "[t]here [was] no dispute that government employees performing such work are entitled to seek the protection of qualified immunity." *Id.* at 393–94.

The ESI Defendants thus may be able to assert qualified immunity as a defense at a later stage of this case.[3] The Court does not address that defense in this Order because, first, it was not

---

[3] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

raised in the parties' briefs, and second, this argument is better considered at the summary judgment stage. *See McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) ("[A] defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route.").

The ESI Defendants' motion to dismiss Count One therefore is denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED** in part and **DENIED** in part. The Town Defendants' motion to dismiss Count One as to Mr. Yagaloff is **DENIED**, and its motion to dismiss Count Two is **GRANTED.** The ESI Defendants' motion to dismiss Counts One is **DENIED** and their motion to dismiss Count Two is dismissed as moot.

SO ORDERED at Bridgeport, Connecticut, this 1st day of June, 2018.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).